Case No. 17-5082, Estate of Earnest Lee Boyland et al. Appellants v. United States Department of Agriculture et al. Mr. Halberg for the Appellants, Ms. Utrecht for the Appellees. Ms. Utrecht for the Appellants. Good morning. Good morning. I'm Robert E. Halberg, Jr. I represent the plaintiffs' appellants in this matter. May it please the Court. This case arises out of longstanding litigation beginning with the so-called Pigford cases in the 1990s. What has happened here, however, is above and beyond Pigford. What USDA has done is essentially to do an in-run around whatever preclusive effect Pigford might have on the class of plaintiffs we represent. I would like to explain what I mean by that. African American women are members of the benefited group of applicants permitted by the USDA to submit claims. They are members of the association, which is a co-plaintiff here. If Pigford had any preclusive effect that was honored by USDA, then they would not have been members of the class. However, they have been permitted to submit applications and to recover, except in those instances in which there is some proof of double-dipping, which was a proviso in setting up this particular administrative process. The administrative process has not resulted from a court order or a formal settlement. It is a voluntary program entered into by the USDA. Mr. Halberg, just backing up, did the individual plaintiffs that you represent here file claims before or seek to raise discrimination issues with the USDA before the date in 1997 that all of these different schemes require for eligibility? I didn't see that pleaded in the complaint. Well, the association participated in litigation as a proposed intervener in the Garcia and Love litigation, which this combined process was set up to address. But I was asking you a different question. In order to recover in any of these different cases, they have in common the requirement that somebody have made some objection that their denial of the benefits in the USDA program was discriminatory. They had to make some objection in some form before July of 1997. And in reading the complaint, I didn't see allegations that your individual clients had done that. Well, there are two things. One, the application form clearly permitted estates of which these three individuals represent to file claims. Secondly, there was a notice that gave a deadline for supplementing the applications under the process. That deadline had not been reached before the denials were issued by EPIC as the agent of USDA on the grounds that these three individual applicants were, quote, African American males. I'm not sure that we're connecting. Let me put this another way. Had your clients wished to do so, could they have recovered back when the window was open in Pickford 1? Were they people that were eligible to make claims in Pickford 1 because they were African American and they were subjected to discrimination and they had tried to get that corrected at some time before July of 1997? Were they such people? They were, and the fact situation of what the discriminatory act was in that permitted time period under Pickford 1 is set forth in the exhibits to the complaint. Each of the plaintiffs described what the discrimination was that the person who is now deceased but whose estate had suffered and, therefore, they are bringing this forward now on this grounds. But they did not bring it forward in Pickford. They did not bring it forward in Pickford. Is that correct? They did not apply in Pickford. I do not know whether it was with regard to their health or, excuse me, Your Honor. I think that's what we're exploring is there was a class action where they were a part of the defined class and there was all the remedial expansion that went on in Pickford 2. And at no time did they claim their class status in Pickford. And now they're coming forward and claiming it in a class where they're not within the described class. I have to say that doesn't make a lot of sense on its face, counsel. Well, this is essentially what I call a hybrid equal protection situation. The reason for the denial by USDA's agent, Epic, was, quote, you are an African-American male. So there is, as the complaint sets out in many of its paragraphs, both racial and sex discrimination. Right. I'm sorry to interrupt. Go ahead. Finish your sentence. The third bite of the apple has been granted here to African-American women. It has not been granted to African-American men. We believe that Pickford, whatever preclusive effect it might otherwise have, does not cover this current situation in which USDA voluntarily, not under court order, with, as alleged in the complaint, Epic denying this with some derogatory remarks there, which might go to the actual intent and discriminatory purpose part of the argument. This is a situation where someone else, the African-American women, some of whom are members of the association, it's the association's purpose to make sure that all of its members are treated equally. That's within its zone of interest. That makes it germane to the purpose of the association. In addition to the other distinguishing factors for standing of the association that were not addressed in the Love v. Vilsack and Garcia v. Vilsack denial of intervention, the association is on time here. It's not untimely filing 13 years after the litigation began. It has individual members who are also discriminated against. Did you make this argument in your briefs, the argument you're making in response to Judge Pilgrim's question? Was that in your briefs, and if so, where?  I think, Your Honor, that's the logical conclusion of what has been alleged, that it's both race and sex and the benefited class contrasted with the unbenefited class. Where was it made in your briefs is what I'm asking. I may have overlooked it. Yeah, I have not mentioned specifically in the briefs the third bite of the apple, Your Honor. That's my creation to illustrate to Your Honor what the practical effect is. If, for instance, excuse me. It looks like my time is up, and I've reserved two minutes for rebuttal. But if you have a question, I will answer it. You can finish the question. The natural effect is if the USDA did not on its own preclude African American women by virtue of Pigford but rather denied on the basis of both sex and race male members of the African American race, there is not an equal protection being applied by USDA. Just wait just one second. Does the complaining documents in this underlying action here allege racial discrimination as a basis for recovery or only gender discrimination? It alleges both in paragraphs 11, 59. I have others here, Your Honor. 108, 115 specifically combines race and gender in those paragraphs of the complaint. And that's the basis, Your Honor, for arguing that this is not a Pigford-Bard matter but is a matter of an independent act done by USDA with ethics assistance. And it has resulted in discrimination against African American males but not having excluded African American females from the application process. I guess one question is if you understand the query, you know, are you Hispanic or are you female, to the are you a person who is eligible to be considered a victim of discrimination based on your Hispanic heritage or based on being female, then that's the kind of discrimination that this process is set up to remedy. So I understand your point that on its face this is asking a racial and sex-based question. But the black woman is someone who is able to say, yes, I was someone who was perhaps discriminated against based on my sex, whereas the African American man isn't in that same position. Isn't that right? Well, I don't think, Your Honor, if you look at sort of a reality check, the issue here back in the 1980s and 1990s, and hopefully it has been corrected, but local county agents, when someone walked in the door, would make a determination that they would not extend loans or other benefits for a whole range of disadvantaged, socially disadvantaged farmers, as defined in the 2008 Act. But you can't sit there and split the mind of the county agent, which was the original discrimination, nor can you, in terms of what was set out as the criteria here, necessarily split the mind of EPIC or USDA to say that we will screen out African American women who would have had a chance under Pigford I and possibly, if they'd late filed under Pigford II, to have filed. USDA did not do that. EPIC did not do that. And we believe that that is grounds for, one, reversing the district court on these equal protection grounds, using CAN II to send the case back to consider the various equitable reliefs that CAN II directed the district court to look at in that particular litigation, and, in addition, because we believe the district court erred in the application of an activity-specific but not overall corporate analysis in denying any sort of standing with regard to EPIC, that discovery be ordered on EPIC so that we can see exactly what particular program, what types of federal financial assistance in the form of subsidies it may have received under the proper test. So, in short, we ask the Court to reverse and remand the case. Thank you very much. Good morning. Good morning, Your Honor. Jennifer Utrecht on behalf of the United States Department of Agriculture. I'm joined by my colleague, Charlie Scarborough, and counsel for EPIC, Stephen Murphy. May it please the Court. Plaintiff's complaint in this case falls on all scores, because at bottom they're requesting a declaration that the claims adjudication process set up to settle the claims of discrimination brought by those who believe they were discriminated against on the basis of their Hispanic heritage or their gender. They wish to have a declaration that that violates the Equal Protection Clause and an injunction forcing the United States to settle the claims of these black male farmers. But the plaintiffs had that opportunity in the Pigford settlements. Their claims have been settled, and they are not injured by the USDA offering settlement to these additional parties. Based on that, as we have asserted in our briefs, the plaintiffs do not have either an injury, nor is their alleged injury redressable by this Court. How do you respond to Mr. Halberg's point that African American women would equally have had an opportunity in Pigford I and Pigford II, and yet they might still be able to participate in the Love case? And that shows, in their view, that there's a discrimination. I think the first thing to note about that is that this is not a theory that was presented either in the complaint or in this briefing. But beyond that, we have the female African American farmers may have been able to present claims that they were discriminated against on the basis of their race in the Pigford settlements, but they would not have been able to present claims of discrimination that they had been discriminated against on the basis of their gender, which they are allowed to do here. And the reference to their race in any proceedings here could refer to the possibility of a mixed discrimination, that is to say a discrimination that was on both bases, so that we don't have to split that out. Correct. And also, Your Honor, I will note that anyone who claimed money from the Pigford settlement is precluded from asserting claims to the female and Hispanic farmers' claim adjudication process, which prevents anyone from double-dipping for the discrimination that they have received. I wonder whether you have any further information about whether these individual plaintiffs – is there anything in the record that they made some kind of objection before July 1, 1997? No, Your Honor. At least as far as the complaints and the actual applications that they submitted to the Hispanic and female farmer adjudications, which are attached to the complaint, nothing suggests that these particular individuals, the named plaintiffs in this case, submitted claims of discrimination to the USDA prior to the 1997 date, which is an additional reason why, even if they were allowed to participate in this claims process, they may not be able to receive anything because they don't have live claims of discrimination at this point. Now, that would mean also, though, that they wouldn't have been barred, per se, by Pigford I or Pigford II settlements because they wouldn't have been included in the class of those settlements. They would not have been included in the class of those settlements, but the tolling of the – So this is going back to keep in mind that the claims of discrimination of these named plaintiffs is from the 1980s. The ordinary statute of limitations for these credit discrimination claims is two years. In – I believe it was 1997, Congress told that statute of limitations for anyone who had presented a claim to USDA prior to the effective date in 1997. The plaintiffs have not alleged in this case that they have presented such a claim to the USDA, and thus there's no indication that the statute of limitations would have been told for them. And the current – the Garcia and the Love administrative processes also require a showing that someone had made – presented some kind of timely discrimination claim before 1997. I believe that's correct, Your Honor. Do you have any doubt whether that's correct? I am fairly certain that's correct, Your Honor. And in terms of the actual process, the claims process, it doesn't at the threshold ask about that, whether the particular claims were timely asserted? It doesn't ask that at the threshold. In the initial applications, I don't believe that is asked. Is there anything in the record that shows us where it is asked in Love and in Garcia? That would really be helpful to know that. I'm happy to submit supplemental briefing to the extent Your Honor thinks that is necessary to resolve this case. But, again, we're looking at a motion to dismiss here, and we have to look at the allegations the plaintiffs have made. They have made no allegations that they aren't part of the Pickford class. Well, but everyone seems to agree this morning that they're not, because they didn't qualify for the Pickford class, because they didn't make any kind of objection that they had been subjected to discrimination. They didn't make that such objection before July 1, 1997. Is that right? No. There has been no allegation one way or the other, whether they made a claim to the USDA before 1997. I don't believe everyone's agreeing that they did not. What has been alleged is that they never submitted a claims package to the Pickford claims settlement. Right. But their position seems to be, in my view, they seem to be just blowing by that July 1, 1997, deadline for having made some kind of protest of discrimination and behaving as if they could benefit from Garcia or from Love from the administrative process, notwithstanding no allegation of having done that, because they don't see, at least on the face of it, where that block is going to prevent them. They're just saying, hey, we're being told because we're black, because we're male, we can't participate, we want to participate. And you're trying at the threshold to say, no, no, no, you can't even get into that, because your claims are dead. And it's on us to figure out dead why. Because Bard merged into the settlement in one of the Pickford cases, or dead because completely untimely. And those are two different reasons why the claim might have been extinguished. And if only one of them is apparent from the record, that makes it difficult for you. Well, Your Honor, I think that just highlights an additional problem with the complaint. It doesn't underscore a weakness in our argument, but merely suggests there are two – you're correct that there are two avenues in which this is dead. Either they were members of the Pickford class, in which case their entire claims have been settled in the Pickford settlement process, or they never submitted claims to the USDA at all, and there was never any – they don't have live claims of discrimination for the USDA to settle. Now, there is an – No, they're beyond the statute of limitations. Correct, Your Honor. And there is the additional reason why the relief that they're requesting is not available here, which is that this court cannot force any party to settle, and it would be very strange indeed for the court to order the United States government to open up a claims process that was designed to settle the live claims of people who had been discriminated against on the basis of their Hispanic ethnicity or their gender to an entirely different class of people. But wouldn't we, under city of Jacksonville, be able to, if we got to the merits of the plaintiff's claims, say, if they were right on the merits, which at the standing stage we have to assume that they could be, say it was discrimination in violation of equal protection in Title VI for the government to set up an administrative process by settlement or otherwise that is facially discriminatory, therefore we invalidate that process and let the parties go back to figuring out how to rebuild. I mean, that's their position, I believe. And, Your Honor, I don't believe that they have sufficiently alleged a plausible racial discrimination here. Well, it's on its face. They got letters that said you're black. And so they're saying, you know, at least you have to justify that. That's the merits, right? But we're talking now about standing. And on that, I guess I just have one more question for you, which is can you explain why accepting your position that these plaintiffs lack standing does not require us to make assumptions that their merits claim is a loser? You see what I'm saying? You know, when we decide standing, we bracket the merits and say, we still see no redressability. Can you help to make clear that we're not, you know, if we were to accept your position, we would not be doing so via an assumption that their claim is invalid on the merits? Right. Well, I think in many cases standing and the merits do start to collapse. But I can try to parse that out as best as possible. If you start with the alleged injury here, they claim that they have been denied an attempt to present their claim of discrimination to the USDA by the creation of this Hispanic and female farmers claims adjudication process. And regardless of what you have to think about whether racial discrimination existed in this, which it did not on the merits, at bottom they do not have live claims of discrimination to present to the USDA. Either they had an opportunity to present it before 1997 at the tolling, before the statute of limitations tolling period, or they were part of the Pigford settlement class. And in either case, they do not have live claims of discrimination to present. They therefore do not have their claimed injury, that their claimed injury is not caused by the Hispanic and female farmers settlement, and the redressability prong cannot force the United States government to settle cases that have already been resolved conclusively. I may be making this too simple in this question, but if an African-American woman was out there during the time of Pigford who believed she had been discriminated against and she believed it was on the basis of her gender, she could not have asserted that claim in the Pigford litigation, could she? In the Pigford claims process, under both two tracks, you had to prove that you had been denied on the basis of race, so she could not have asserted her claim of gender. If she had a gender claim, that had to await this class to be adjudicated in a class action, right? That's right. All right, fine. Thank you. I didn't think that was too simple, but I was afraid it might be. If there are no further questions, we ask that you affirm the decision of the district court. Thank you. Mr. Haberg, we'll give you back two minutes for a rebuttal. Thank you, Your Honor. I know I took some extra time responding to Your Honor's questions earlier. I appreciate the opportunity to respond. We believe, Your Honor, that this particular situation, and obviously it's subject to factual proof, with regard to what steps or not the individual plaintiffs took back before 1997, we believe that this essentially, if they're not precluded by Pigford as an alternative form of analysis, they are also, because of the discrimination currently injured, because they have not been treated in an equally protected way by the agency and its agents. Isn't that an inherent characteristic of class actions, that the people within the class are treated differently than people without the class? That is, to say to anticipate in any class action, you have to come within the parameters of the defined class. Well, in this particular instance, Your Honor, there is a favoritism currently in the process that USDA has employed, basically to give an African-American woman who assumes. What are they offering here to people who were discriminated against because of their gender that they haven't already offered in Pigford to black farmers who were discriminated against because of their race? I guess you could say allegedly, but I think it's much more than allegedly. Well, there's been a lot of litigation, Your Honor, with regard to the adequacy of the relief here compared to the adequacy of the relief in Pigford. Well, any inadequacy of relief in Pigford has been litigated already, has it not? That's correct, Love and Garcia. That series of cases has been resolved, Your Honor. And so we don't argue that somehow we can piggyback on an adequacy argument. Our argument is that these African-American males were told, you have two characteristics that are going to disqualify you, not because of any Pigford-based disqualification. Well, actually, it's just a way of saying you lack a characteristic that would qualify you. That is to say they are not persons who are claiming on the basis of gender discrimination. That's really all they're saying when they exclude them from the classes, is it not? Just as you and I would be excluding people. That's not clear what the rationale was to have someone who may have not double-dipped in the sense of having gotten a Pigford claim and therefore would be barred as an African-American woman here, but who may have qualified and been included in the Pigford class and yet is given this so-called third bite of the apple. Mr. Hubbard, in response to Judge Sentel's question of what's being offered here that's better than what was offered in Pigford I or Pigford II, isn't the answer to that that your clients, in order to participate in Pigford, would have had to file their claims before May of 2012, whereas to participate in Garcia and Love, they had until May of 2013, and they, in fact, filed in that year in the Garcia and Love after the Pigford was already closed? Isn't that, practically speaking, why they're coming to the Garcia and Love process rather than to the Pigford process? They did take advantage of that application. I can't say, Your Honor, whether any failure to participate in Pigford early was due to the health or the death of those particular individuals whose estates are before you. So if the Pigford claims processing deadline were the same as that for Garcia and Love, and they said the claimants based on racial discrimination based on being African-American go here, claimants whose discrimination is based on being a woman or Hispanic go here, would you have any objection, legal objection, constitutional objection, Title VI objection, to being put in the pile that says if the basis of your discrimination is that you were discriminating against based on being African-American, you go here. You wouldn't have any equality claim there, would you? Your Honor, all these plaintiffs want is access to whatever the terms and conditions are presently in this particular Hispanic-slash-women's claim. Thank you, Your Honor. My time has expired. Thank you very much. The case is submitted.
judges: Griffith, Pillard, Sentelle